UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JAMES SHERIDAN, et al.,

    Plaintiffs,

v.

NEW VISTA, L.L.C., et al.,

    Defendants.
_____/

Case No. 1:05-CV-428

HON. GORDON J. QUIST

## **OPINION**

The Court has before it Plaintiffs' motion to remand as well as Defendant Charles Bee's ("Bee") motion to dismiss or remand or in the alternative to dismiss for lack of personal jurisdiction. For the reasons set forth below, the Court will grant Plaintiffs' motion and remand the case.

## **Background**

Plaintiffs filed their original complaint in this case in the Kent County Circuit Court on or about March 14, 2005, and filed their first amended complaint on or about April 20, 2005. In their complaint and first amended complaint, Plaintiffs alleged various state law claims, including, among others, claims for unjust enrichment, breach of fiduciary duty, fraud, negligent misrepresentation, and professional malpractice. The crux of Plaintiffs' claims is that Defendants unlawfully developed and induced Plaintiffs to engage in a foreign currency option ("Strategy") that was designed to produce a substantial profit and/or provide substantial tax savings.

Although not the sole basis for Plaintiffs' claims, a recurrent and important theme repeated throughout the amended complaint is that Defendants knew or should have known that the Internal

Revenue Service ("IRS") would take the position that the purported losses generated by the Strategy were not properly allowable for federal and state income tax purposes. For example, in paragraph 114 of the amended complaint relating to IRS Notice 1999-59, entitled "Tax Avoidance Using Distribution of Encumbered Property," Plaintiffs allege:

> As a result of Notice 1999-59, the Defendants knew or certainly should have known that the IRS would assert that the purported losses arising from the Tax Strategy were improper and not allowable for tax purposes; however, the Defendants intentionally did not disclose this information to Plaintiffs and, indeed, continued to tell them the exact opposite.

(1st Am. Compl. ¶ 114.) Plaintiffs similarly allege that IRS Notice 2000-44, which was issued after Plaintiffs engaged in the Strategy, "clearly and unequivocally informed accountants and tax attorneys across the country that it believed options strategies like the Tax Strategy were illegal," (id. ¶ 118), and that Defendants ignored the notice and failed to retract or modify their advice about the tax implications of the Strategy, even though they knew or should have known that the IRS would contend that the losses Plaintiffs realized from the Strategy were not properly allowable, (id. ¶¶ 119-21.) Plaintiffs allege that Defendants breached their fiduciary duties to Plaintiffs by, among other things, failing to: (1) "disclose to Plaintiffs that if they filed tax returns claiming capital and/or losses based on the Tax Strategy the IRS would contend they would be liable for penalties and interest"; (2) "advise Plaintiffs that the design of the Foreign Currency Options made no economic or investment sense and had no business purpose or economic substance"; and (3) advise Plaintiffs about the existence and implications of IRS Notices 1999-59 and 2000-44. (Id. ¶ 162(4), (7), and (9)-(13).) Plaintiffs claim that as a result of Defendants' misrepresentations and omissions, they incurred income tax penalties and interest, as well as other damages.

On June 20, 2005, Lincoln Financial Advisors ("Lincoln"), which was first named as a defendant in the first amended complaint, removed the case to this Court, alleging that the Court has

jurisdiction pursuant to 28 U.S.C. § 1391 because "the allegations of Plaintiff's [sic] Complaint raise substantial disputed issues of federal tax law and implicate a substantial federal interest in construing tax law." (Notice of Removal ¶ 5) (citing Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg., __ U.S. __, 125 S. Ct. 2363 (2005).) Lincoln also alleged that Bee was served on June 17, 2005, and had thirty days in which to join in the removal and that Defendant Adrien Dicker ("Dicker") had not yet been served. (Id. ¶ 4.)

## Discussion

As noted above, two motions are before the Court: (1) Plaintiffs' motion to remand; and (2) Defendant Bee's motion to remand or dismiss for lack of subject matter jurisdiction or in the alternative motion to dismiss for lack of personal jurisdiction. Bee's motion raises two issues, namely, whether Bee's lack of consent to the removal requires remand and whether Bee is subject to personal jurisdiction in Michigan. Plaintiffs' motion to remand also raises the issue of Bee's lack of consent, but in addition raises the issues of whether Defendant Dicker's lack of consent requires remand and whether this case arises under federal law. Because the Court concludes that the federal issues presented are insufficient to invoke this Court's federal question jurisdiction, the Court need only address the issue of federal question jurisdiction.

As a court of limited jurisdiction, this Court must proceed with caution in deciding that it has subject matter jurisdiction. Musson Theatrical, Inc. v. Federal Express Corp., 89 F.3d 1244, 1252 (6th Cir. 1996). "Due regard" must be given to the power reserved to the states under the Constitution to provide for the determination of controversies in their courts. Shamrock Oil & Gas Corp. v. Sheets, 313 U.S. 100, 108-09, 61 S. Ct. 868, 872 (1941). Removal statutes are thus strictly construed to promote comity and preserve jurisdictional boundaries between state and federal courts. Alexander v. Elec. Data Sys. Corp., 13 F.3d 940, 949 (6th Cir. 1994).

The removing party has the burden of establishing subject matter jurisdiction. Van Camp v. AT&T Info. Sys., 963 F.2d 119, 121 (6th Cir. 1992) (removing defendant has burden of establishing that case presents a federal question); Gafford v. General Elec. Co., 997 F.2d 150, 155 (6th Cir. 1993) (removing defendant has burden of establishing that diversity jurisdiction requirements are met). Any doubt about the removability of the case must be resolved against removal. Her Majesty The Queen v. City of Detroit, 874 F.2d 332, 339 (6th Cir. 1989).

"Only state-court actions that originally could have been filed in federal court may be removed to federal court by the defendant." Caterpillar, Inc. v. Williams, 482 U.S. 386, 392, 107 S. Ct. 2425, 2429 (1997). Because diversity is absent in this case, Defendants must show that the Court has federal question jurisdiction over Plaintiffs' claims. Id. Whether federal question jurisdiction exists is determined by examining the plaintiff's well-pleaded complaint. Federal question jurisdiction arises where a "well-pleaded complaint establishes either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law." Franchise Tax Bd. v. Constr. Laborers Vacation Trust, 463 U.S. 1, 27-28, 103 S. Ct. 2841, 2856 (1983). Under this rule, the plaintiff is the master of his claim and can avoid federal court jurisdiction by relying exclusively on state law. Caterpillar, Inc., 482 U.S. at 392, 107 S. Ct. at 2429. Even if the plaintiff does not allege an express or implied federal claim, the claim will be subject to federal jurisdiction where "'the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law,' in that 'federal law is a necessary element of one of the well-pleaded . . . claims.'" Christianson v. Colt Indus. Operating Corp., 486 U.S. 800, 808, 108 S. Ct. 2166, 2173-74 (1988) (quoting Franchise Tax Bd., 463 U.S. at 27-28, 13, 103 S. Ct. at 2856, 2848). However, it is not enough that a federal issue is merely present in the state law claim. Merrell Dow Pharm., Inc. v. Thompson, 478 U.S. 804, 813, 106 S.

4

Ct. 3229, 3234 (1986); see also Gully v. First Nat'l Bank, 299 U.S. 109, 115, 57 S. Ct. 96, 99 (1936) ("Not every question of federal law emerging in a suit is proof that a federal law is the basis of the suit."). Rather, a state law claim invokes federal question jurisdiction "if a substantial federal question of great federal interest is raised . . . and if resolution of that federal question is necessary to the resolution of the state-law claim." Long v. Bando Mfg. of Am., Inc., 201 F.3d 754, 759 (6th Cir. 2000) (citing Merrell Dow, 478 U.S. at 808-10 & n.5, 813-14 & nn.11-12, 106 S. Ct. at 3232-33 & n.5, 3234-35 & nn. 11-12). Moreover, the Supreme Court has cautioned that courts should make "principled, pragmatic distinctions" and "careful judgments about the exercise of federal judicial power." Merrell Dow, 478 U.S. at 813-14, 106 S. Ct. at 3234-36.

The Supreme Court revisited the issue of federal question jurisdiction recently in Grable & Sons Metal Products v. Darue Engineering & Manufacturing, __ U.S. __, 125 S. Ct. 2363 (2005), in order to resolve a circuit split regarding whether Merrell Dow requires a federal cause of action as a condition for exercising federal question jurisdiction. The Court answered no. See id. at 2365. In doing so, the Court staked out the boundaries of federal question jurisdiction where federal law does not provide a right of action as follows: "[T]he question is, does a state-law claim necessarily raise a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." Id. at 2368. The plaintiff in Grable & Sons filed a quiet title action in Michigan state court alleging that the defendant's title to certain property was invalid. The defendant had purchased the property from the IRS after the IRS seized it in order to satisfy the plaintiff's federal tax delinquency. As required by a Michigan court rule, the plaintiff alleged that it had superior title to that of the defendant on the basis that the IRS failed to give it proper notice of the seizure as required by 26 U.S.C. § 6335(a). The defendant removed the case to federal court alleging federal

5

question jurisdiction. The district court held that it had jurisdiction and rejected the plaintiff's claim that the statute required personal service. The Sixth Circuit affirmed on both jurisdiction and the merits. In considering the jurisdictional issue, the Supreme Court first determined that the adequacy of notice under the statute presented a substantial federal issue because the meaning of the federal statute was an essential element of the plaintiff's quiet title claim that was actually in dispute. In fact, the Court noted, the meaning of the federal statute "appear[ed] to be the only legal or factual issue contested in the case." Id. at 2368. The Court observed that the meaning of the federal tax provision was an important issue of federal law that belonged in federal court, especially in light of the Government's interest in the "'prompt and certain collection of delinquent taxes,'" and the IRS' need for certainty in notice requirements to provide buyers of seized property assurance that the IRS has taken all steps required to convey good title. Id. (quoting United States v. Rodgers, 461 U.S. 677, 709, 103 S. Ct. 2132, 2135 (1983)). The Court also concluded that the exercise of federal jurisdiction in the case would not upset the division of labor between state and federal courts: "it will be the rare state title case that raises a contested matter of federal law [and] federal jurisdiction to resolve genuine disagreement over federal tax title provisions will portend only a microscopic effect on the federal-state division of labor." Id.

Defendants contend that Grable & Sons provides compelling authority supporting the exercise of federal question jurisdiction in this case because the Plaintiffs' claims require interpretation of federal tax law, i.e., whether the Strategy violates federal tax law. The Court sees things differently. First, in Grable & Sons, the issue of whether the notice was sufficient under the statute took front and center stage in the litigation – as the Supreme Court observed, the meaning of the statute was really the only legal or factual issue in the case. In contrast, the validity of the

Strategy under federal tax law is only one facet of this case.  Admittedly, a perusal of Plaintiffs' 204-page, 518-paragraph first amended complaint reveals that Defendants' representations regarding the validity of the Strategy under federal tax law and the reasonableness of Defendants' treatment and interpretation of various IRS notices and regulations are central themes in the litigation.  They are not, however, the sole focus of the case.  Apart from the tax implications of the Strategy, Plaintiffs allege, among other things, that Defendants failed to advise them: (1) that there was no reasonable probability that the contracts used in the Strategy would produce a profit and that the Strategy was simply a wager; (2) regarding the true roles of the various Defendants in the Strategy; (3) regarding the suitability of the Strategy for Plaintiffs as an investment; and (4) that their representation of Plaintiffs would be impaired by their own interest in the transaction and/or their relationship with other Defendants in the transaction.  (E.g., 1st Am. Comp. ¶¶ 46, 139, 162(1)-(3), (5), (8).)  Second, unlike the claim in Grable & Sons, Plaintiffs' claims do not call into question the proper interpretation of federal tax law, but rather concern the reasonableness of Defendants' interpretation of federal tax law, i.e., whether Defendants knew or should have known that the Strategy was invalid under federal tax law.  In other words, even if Plaintiffs are correct that the Strategy was improper and illegal as set forth in IRS notices or regulations, the relevant inquiry, as Plaintiffs allege in their first amended complaint, is whether Defendants were aware of or should have been aware that the Strategy was invalid.[1]  Finally, the Court in Grable & Sons found that resolution of the issue by a federal forum was "consistent with congressional judgment about the sound division of labor

---

[1] For example, with regard to the fraud and negligent misrepresentation claims, the Court notes that the Michigan Court of Appeals has held that an erroneous legal opinion cannot form the basis of a fraud or a negligent misrepresentation claim.  See City Nat'l Bank of Detroit v. Rodgers & Morgenstein, 155 Mich. App. 318, 323, 399 N.W.2d 505, 507-08 (1986) (per curiam).  On the other hand, a statement of opinion made in bad faith 'by one who is possessed of superior knowledge respecting such matters, with a design to deceive and mislead," may constitute an actionable misrepresentation.  French v. Ryan, 104 Mich. 625, 630, 62 N.W. 1016, 1017 (1895).

7

between state and federal courts governing the application of § 1331," and would not disturb that balance because the likelihood of a federal issue of law arising in a state quiet title action is small. The possible consequences of federal jurisdiction in this case are much more broad. Although Defendants attempt to paint this as something other than a "traditionally state case" or a case presenting "garden-variety" state law claims, except for the substance of the claims, there is nothing to distinguish this case from fairly routine state law malpractice claims against attorneys, accountants, or other professionals based upon an unreasonable interpretation of federal tax or securities law. The potential for shifting the division of labor from state to federal courts is much greater in this case because if federal jurisdiction exists here, any malpractice, breach of fiduciary duty, or similar state law claim alleging an unreasonable interpretation of federal law, be it tax, securities, ERISA, etc. would invoke federal question jurisdiction. The mere presence of a federal issue should not produce such a result. See McMaster v. Coca-Cola Bottling Co. of Cal., No. C 04-4642 MHP, 2005 WL 289982, at *6 (N.D.Cal. Feb. 4, 2005) ("State courts routinely consult and apply provisions of the IRC. For instance, in family law cases, the IRC, IRS regulations, and IRS revenue rulings are routinely used as a basis for calculating the value of assets or tax delinquencies, interpreting dissolution of marriage judgments, and other family law matters."); Maryland v. Philip Morris Inc., 934 F. Supp. 173, 178 (D. Md. 1996) ("That questions of federal statutory law may need to be resolved in the course of the litigation is not sufficient to confer federal question jurisdiction on this court.").

The Court's own research reveals that cases alleging a defendant's unreasonable or unsupportable interpretation of federal law generally do not present a federal question or "arise under" federal law. In Diaz v. Sheppard, 85 F.3d 1502 (11th Cir. 1996), the Eleventh Circuit held

that a prisoner-plaintiff's malpractice claim against former class counsel in a class action suit filed by inmates challenging the Florida Department of Corrections' physical and mental health care delivery system did not present a substantial question of federal law. The plaintiff alleged in his state court complaint that in settling the case without making provision in the stipulated judgment for adequate out-of-cell exercise time for inmates on "close management" status, the attorney ignored settled Eighth Amendment law. The defendant removed the case to federal court on the ground that resolution of the plaintiff's claims required a construction of federal law. The Eleventh Circuit held that the claim did not raise a substantial issue of federal law because whether the attorney misread or disregarded federal law in the class action was ultimately an issue of state law and the federal law was mentioned in the complaint only to support an element of the state law claim. See id. at 1505. Moreover, the court found that a state court's interpretation or application of Eighth Amendment would not impermissibly invade the province of federal courts:

> If the pertinent Eighth Amendment law was debatable, to decide whether Sheppard's understanding of the applicable law in [the inmate class action] was within the *range of the reasonable* will require no precise determination of what the pertinent federal law was in reality; so no substantial question of federal law needs to be decided. If the pertinent Eighth Amendment law truly was clearly settled before the stipulated judgment was entered in [the inmate class action], no substantial question of federal law is presented: the question has already been answered. We have no doubt that a state court can, if need be, resolve matters of federal constitutional law to the point necessary to determine whether Sheppard's understanding of the law was unreasonable.

Id. at 1506. See also Custer v. Sweeney, 89 F.3d 1156, 1168-69 (4th Cir. 1996) (holding that the plaintiff's malpractice action based upon ERISA did not present a substantial question of federal law and noting that "the possibility that state courts may incorrectly or inconsistently interpret ERISA's fiduciary duty provisions in the context of malpractice claims . . . does not militate in favor of the exercise of federal subject matter jurisdiction in such cases"); Segal v. Smith, No. CIV A 99-1638,

9

1999 WL 544678, at *3 (E.D. La. July 26, 1999) ("Similarly, the Geismar Plaintiffs allege causes of action based on state law and the availability of attorneys' fees under federal statutes is but a consideration in determining whether the Defendants committed legal malpractice, breached duties owed to Plaintiffs, or were negligent in their representation of Plaintiffs in the underlying federal court intervention.  Plaintiffs' claims do not 'depend necessarily' on the interpretation of the federal statutes nor do the federal statutes create a right to relief in the malpractice claim.")

Similarly, in Berg v. Leason, 32 F.3d 422 (9th Cir. 1994), the Ninth Circuit held that the plaintiff's state law malicious prosecution claim based upon a prior federal securities and RICO lawsuit did not raise a substantial question of federal law.  The defendant removed the case to federal court, arguing that because the prior lawsuit was based upon state law, the suit raised a substantial question of federal law because the court would have to determine whether the prior lawsuit was supported by probable cause – an element of the state law claim.  The court rejected the argument, noting that whether the underlying action had a sufficient degree of merit was a matter determined by state law.  Id. at 425.  The court also rejected the defendant's reliance upon federal judges' superior knowledge of federal securities laws as a basis supporting federal jurisdiction: "State courts resolve matters of federal law in similar circumstances with no difficulty; neither an affirmative defense based on federal law, nor one based on federal preemption, renders an action brought in state court removable." Id. at 426 (citations omitted).

In the instant case, Plaintiffs' claims arise under state law, and the fact that those claims may present questions of federal tax law is not sufficient to present a substantial federal question. Defendants cite as support for their position Becnel v. KPMG LLP, __ F. Supp. __, 2005 WL 2016246 (W.D. Ark. June 21, 2005), which found that the plaintiffs' claims based upon a similar tax

strategy presented a substantial federal question and denied the plaintiffs' motion for remand. To the extent that the claims in Becnel were similar to those in this case, this Court disagrees with and declines to follow Becnel for the reasons set forth above.

## Conclusion

For the reasons set forth above, the Court will grant Plaintiffs' motion and remand the case to state court. The Court will also grant Defendant Bee's motion to remand but will dismiss his motion to dismiss for lack of personal jurisdiction without prejudice so that he may present that issue to the state court upon remand if he chooses to do so.

An Order consistent with this Opinion will be entered.


Dated: August 30, 2005                              /s/ Gordon J. Quist
                                                   GORDON J. QUIST
                                         UNITED STATES DISTRICT JUDGE